1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT WOODS, et al., | ) | 1:06-cv-00398-SMS |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART THE MOTION OF |
| v. | ) | DEFENDANT PROTECTION ONE ALARM |
| | ) | MONITORING, INC. TO DISMISS (DOC. |
| ASSET RESOURCES, et al., | ) | 22) |
| | ) | |
| Defendants. | ) | ORDER DENYING THE MOTION OF |
| | ) | DEFENDANT ASSET RESOURCES, INC. |
| | ) | TO DISMISS (DOC. 20) |

Plaintiffs are proceeding with a civil action in this Court. By order dated August 30, 2006, entered upon to the parties' consent, Judge Oliver W. Wanger assigned this action to the undersigned Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

Pending before the Court are the motions of Defendant Protection One Alarm Monitoring (POAM) and Defendant Asset Resources (AR) to dismiss.

## BACKGROUND

Defendants POAM and AR removed this action from the Merced County Superior Court on April 6, 2006, on the basis of a first amended complaint (FAC) filed in state court. The basis of this

1

1  Court's jurisdiction appears to be diversity of citizenship
2  because no claims under the Fair Credit Reporting Act are stated.
3  Plaintiffs seeks compensatory and punitive damages from
4  Defendants for allegedly malicious and false publication of
5  derogatory and false credit information, breach of contract, and
6  violation of the California Consumer Credit Reporting Act, Cal.
7  Civ. Code § 1785.1 et seq. Defendant AR filed an answer in this
8  Court on May 9, 2006; Defendant POAM answered on August 29, 2006.

9        Defendant AR filed a motion to dismiss on October 27, 2006.
10 Plaintiff filed opposition (styled as a reply) on November 12,
11 2006 (Doc. 24).

12       Defendant POAM filed a motion to dismiss on October 27,
13 2006.

14       Plaintiff filed opposition (styled as a reply) on November
15 12, 2006 (Doc. 23). A reply was filed by Defendant POAM on
16 November 22, 2006 (Doc. 25).

17       On December 1, 2006, the motions came on regularly for
18 hearing at 9:30 a.m. in Courtroom 7 before the Honorable Sandra
19 M. Snyder, United States Magistrate Judge. P. Michael Pekin
20 appeared on behalf of Plaintiffs. Alexander J. Harwin was present
21 on behalf of Defendant POAM; Edgar De Verra and Christopher Mundt
22 appeared telephonically on behalf of Defendant AR. The Court had
23 reviewed all the papers submitted in support of the motion. After
24 argument, the parties were invited to submit to the Court a copy
25 of the original complaint filed in the Merced Superior Court on
26 or about August 2003. Thereafter the matter was submitted to the
27 Court for decision.

28

<u>MOTION TO DISMISS OF DEFENDANT POAM</u>

I. <u>Failure to State a Claim upon Which Relief May Be Granted</u>

A motion pursuant to Fed. R. Civ. P. 12(b)(6) [failure to state a claim upon which relief may be granted] may be raised after the moving party has filed a responsive pleading to the challenged complaint by way of a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Fed. R. Civ. P. 12(h); <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1093 (9th Cir. 1980). A motion for judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. <u>Merchants Home Delivery Service, Inc. v. Frank B. Hall & Co.</u>, 50 F.3d 1486, 1488 (9th Cir. 1995). The standard on a motion for judgment on the pleadings is the same as that applied on a motion pursuant to Fed. R. Civ. P. 12(b)(6). <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990).

Fed. R. Civ. P 12(b)(6) provides for the making of a motion to dismiss for failure to state a claim upon which relief can be granted; such a motion tests the legal sufficiency of the claim or claims stated in the complaint. Dismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1274 (9th Cir. 1993). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, (1957). Dismissal is proper only where there is either a

1 lack of a cognizable legal theory, or an absence of sufficient

2 facts alleged under a cognizable legal theory. <u>Balistreri v.</u>

3 <u>Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

4    In considering a motion under Fed. R. Civ. P. 12(b)(6), a

5 court must construe the complaint in the light most favorable to

6 the plaintiff; accept all well-pleaded factual allegations as

7 true; and determine whether the plaintiff can prove any set of

8 facts to support a claim that would merit relief. <u>Cahill v.</u>

9 <u>Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

10 Conclusory allegations of law and unwarranted inferences are

11 insufficient to defeat a motion to dismiss. <u>Pareto v. Federal</u>

12 <u>Deposit Ins. Corp.</u>, 139 F.3d 696, 699 (9th Cir. 1998) Generally, a

13 plaintiff must give the defendant fair notice of the claim and

14 the grounds for making the claim. <u>Leatherman v. Tarrant County</u>

15 <u>Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168

16 (1993).

17    In determining a motion to dismiss or motion for judgment on

18 the pleadings, the Court generally considers only the complaint.

19 <u>Hal Roach Studios, Inc. v Richard Feiner & Co.</u>, 896 F.2d 1542,

20 1555 n.19 (9th Cir. 1990) (as amended). However, the Court may

21 consider matters that are properly the subject of judicial

22 notice. <u>Mullis v. United States Bankcruptcy Court for Dist. of</u>

23 <u>Nevada</u>, 828 F.2d 1385, 1388 (9th Cir. 1987). Further, Fed. R. Civ.

24 P. 10(c) provides that a copy of any written instrument which is

25 an exhibit to a pleading is a part thereof for all purposes.

26 Materials properly attached to the complaint as exhibits pursuant

27 to Fed. Rule Civ. P. 10(c) may be properly considered in

28 determining whether a claim has been stated. <u>Hal Roach Studios,</u>

4

1 <u>Inc. v Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir.

2 1990) (as amended). When a written instrument or subject of

3 judicial notice contradicts allegations in a complaint to which

4 it is attached, the Court need not accept the allegations of the

5 complaint as true. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265,

6 1267 (9th Cir. 1987). Further, without converting the motion to

7 one for summary judgment, the Court properly considers materials

8 referred to in the complaint but not attached, such as the full

9 text of a document quoted only in part in the complaint, if the

10 complaint refers to the document, the document is central to the

11 plaintiff's claim, and no party questions the authenticity of the

12 copy attached to the motion made pursuant to 12(b)(6). <u>Branch v.</u>

13 <u>Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other

14 grounds in <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119,

15 1127 (9th Cir. 2002)).

16        A. <u>Defamation</u>

17     In California, defamation may be either by libel or slander.

18 Cal. Civ. Code § 44. Libel is a false and unprivileged

19 publication by writing, printing, picture, effigy, or other fixed

20 representation to the eye, which exposes any person to hatred,

21 contempt, ridicule, or obloquy, or which causes him to be shunned

22 or avoided, or which has a tendency to injure him in his

23 occupation. Cal. Civ. Code § 45. The elements are 1) an

24 intentional publication, 2) which is false, 3) defamatory, and 4)

25 unprivileged, and 5) which has natural tendency to injure or that

26 causes special damage. <u>Smith v. Maldonado</u>, 72 Cal.App.4th 637,

27 645 (1999). A publication is communication to some third person

28 who understands the defamatory meaning of the statement and its

1  application to the person to whom reference is made. Id.

2                    1. Defamatory Meaning

3       Plaintiffs alleged in the complaint that Plaintiffs were not

4  in default with respect to a two-year contract concerning

5  installation and maintenance of a home alarm entered into in

6  1999, and that the contract had been cancelled and voided and

7  replaced by a later contract concerning an Atwater residence that

8  was subsequently fully performed. Plaintiff alleged a publication

9  of derogatory consumer credit information as follows:

10          15. In June, 2003 plaintiffs learned for the first time
            that defendants falsely published to credit reporting
11          services that plaintiffs had not made their required
            contractual payments to defendants, had defaulted on
12          their payment schedule to defendants, and were indebted
            to defendants (hereafter, "derogatory consumer credit
13          information").

14          16. This published statement of derogatory consumer credit
            information was entirely false because plaintiffs missed
15          no payments, did not default on any obligation, and were
            not indebted to defendant PROTECTION ONE.
16
            17. The derogatory consumer credit information is libelous
17          on its face because the statements were intended to carry
            the meaning, and they do state that plaintiffs do not pay
18          their legal debts and obligations and contracts.

19  Where the words or other matters that are the subject of a

20  defamation action are of ambiguous meaning, or are innocent on

21  their face and defamatory only in the light of extrinsic

22  circumstances, the plaintiff must plead and prove that as used,

23  the words had a particular meaning, or "innuendo," that makes

24  them defamatory. Smith v. Maldonado, 72 Cal.App.4th 637, 645-46

25  (1999). This includes the requirement that in an instance of

26  ambiguous language, i.e., where the language is susceptible of

27  either a defamatory or innocent interpretation, the plaintiff

28  must also allege the extrinsic circumstances which show that the

                                6

third person reasonably understood it in its derogatory sense
(the "inducement"). Id. If the words themselves, under any
circumstances, would convey to those who read or hear them a
meaning within the statutory definitions of libel and slander,
there is no need to plead an innuendo; and if the words under no
circumstances could convey a defamatory meaning, then no innuendo
can make them defamatory. Id. (citing Washer v. Bank of America,
21 Cal.2d 822, 828 (1943)).

Defendant POAM argues that the allegations of the complaint
are not sufficient to reflect a defamatory communication because
if one reviews Exhibit 1, the credit report that Defendant POAM
apparently made to Equifax, it reflects only an entry under
"DEROGATORY ACCOUNTS" of an unpaid debt to Asset Resources, an
admitted collection agency utilized by Defendant POAM, in the
amount of $650.00, reported in July 2002 and last activity on
February 2000; its "present status" is reflected as "COLLECTION."
(Mot., Ex. 1, p. 5.)

Whether a statement is reasonably susceptible of a
defamatory meaning is a question for the Court. MacLeod v.Tribune
Publishing Co., 52 Cal.2d 536, 546 (1959). A mere allegation of
not paying debts is not defamatory per se. Gautier v. General
Telephone Company, 234 Cal.App.2d 302, 309 (1965). It may be
defamatory where it may be implied that a plaintiff failed to pay
an obligation from dishonest motives or from a desire to defraud
a creditor; further, it may be sufficient where there is an
allegation that the plaintiffs were engaged in a vocation where
credit is an important asset and necessary for the proper conduct
of their business. Id. pp. 309-10. Further, where there are

7

1 allegations in the complaint that it was understood as an
2 allegation that the debtor never intended to pay and thus was
3 dishonest and not worthy or any credit, it may likewise be
4 defamatory. Ingraham v. Lyon, 105 Cal. 254, 257 (1894).

5     Here, the complaint alleges that the statement is libelous
6 on its face because the statements were intended to carry the
7 meaning that plaintiffs did not pay their legal debts,
8 obligations, and contracts. (At p. 4.) It further alleges that
9 Plaintiff Robert Woods was a California Highway Patrolman, and
10 his wife later was employed there. It also alleged that the
11 Plaintiffs were unable to refinance their residence in June 2003
12 to take advantage of favorable interest rates, and that their
13 credit rating was excellent but for Defendant's actions. It
14 alleges that Plaintiffs suffered a loss of reputation for being
15 creditworthy and reliable; they suffered shame and mortification
16 and emotional distress.

17     The document which Defendant POAM submits as being the
18 communication in question consists of a credit reporting of
19 Plaintiffs Robert A. Woods and Lori A.Woods dated June 11, 2003.
20 (Opp., Decl of Alexander J. Harwin in Support of Motion to
21 Dismiss/Strike, Doc. 22.) It lists under the heading "DEROGATORY
22 ACCOUNTS" a $650.00 debt owed to Asset Resources, the status of
23 which is "COLLECTION EF." (Id. p. 7.) Given the context of credit
24 worthiness, and considering the heading and the injury to
25 Plaintiffs in their financial dealings, the statement may
26 reasonably be understood as one that Plaintiff/s undertook
27 obligations without the ability or intent to satisfy them and
28 that thus Plaintiff's were not creditworthy. Considering all the

1 allegations of the complaint and the documents referred to
2 therein, Plaintiff has alleged a defamatory statement.

3                    2. <u>Privilege</u>

4      Defendant POAM argues that the defamation claim, like other
5 tort claims, is defeated by the application of Cal. Civ. Code §
6 47(c), which provides that a communication, without malice, to a
7 person interested therein, 1) by one who is also interested, or
8 2) by one who stands in such a relation to the person interested
9 as to afford a reasonable ground for supposing the motive for the
10 communication to be innocent, or 3) who is requested by the
11 person interested to give the information, is privileged. This
12 privilege is a codification of that known as the common interest
13 privilege pursuant to which the defendant bears the initial
14 burden of demonstrating that the allegedly defamatory
15 communication was made upon a privileged occasion, and the
16 plaintiff then bears the burden of proving that the defendant
17 made the statement with malice. <u>Lundquist v. Reusser</u>, 7 Cal.4th
18 1193, 1208 (1994). Where the complaint discloses a case of
19 qualified privilege, i.e., such as where the statement was made
20 upon a privileged occasion, no malice is presumed, and in order
21 to state a cause of action, the pleading must contain affirmative
22 allegations of malice in fact. <u>Id.</u> pp. 1209-12. The Plaintiff
23 must further present evidence sufficient to establish that the
24 statement was made with malice. <u>Id.</u> p. 1210.

25      Plaintiffs concede that the privilege of § 47(c) applies and
26 that actual malice must be pleaded and proved to obtain judgment
27 against POAM for libel. (Opp. p. 2.) This concession appears to
28 be correct. <u>Roemer v. Retail Credit Co.</u>, 3 Cal.App.3d 368, 370

                              9

1  (applying it to mercantile agencies) (1970); <u>Pavlovsky v. Board</u>

2  <u>of Trade</u>, 171 Cal.App.2d 110, 113-14 (1959) (applying it to

3  credit reports of mercantile agencies who collect information and

4  sell it for a profit).

5       Defendant POAM argues that Plaintiff has failed to allege

6  malice.

7       Malice in defamation cases means actual or express malice,

8  including a state of mind arising from hatred or ill will toward

9  the plaintiff, or the state of mind demonstrated by a showing

10 that the defendant lacked reasonable grounds for belief in the

11 truth of the publication and therefore acted in reckless

12 disregard of the plaintiff's rights. <u>Roemer v. Retail Credit Co.</u>,

13 44 Cal.App.3d 926, 936 (1975); <u>see</u>, <u>Frommoethelydo v. Fire Ins.</u>

14 <u>Exchange</u>, 42 Cal.3d 208, 217 (1986). Malice may be inferred from

15 facts showing a lack of reasonable or probable cause to believe

16 in the truth of a defamatory statement; the privilege does not

17 apply where there is a knowing lie or the making of a damaging

18 assertion without any reasonable backing. <u>Stockton Newspapers,</u>

19 <u>Inc. v. Superior Court</u>, 206 Cal.App.3d 966, 980 (1988)

20 (disapproved on another ground in <u>Brown v. Kelly Broadcasting</u>

21 <u>Co.</u>, 48 Cal.3d 711, 720 n.18 (1989)).

22      Here, Plaintiffs alleged that despite having been told by

23 Defendants that the Los Banos contract was cancelled and nothing

24 was owed on it, POAM falsely reported the debt to the credit

25 reporting services, continued to ratify the report, and intended

26 to republish the erroneous account information, from June 2003

27 through March 2005, even after having acknowledged to Plaintiff

28 and to third parties in writing that the derogatory account

1  information was incorrect, after the initiation of the lawsuit in
2  August 2003, and after POAM agents knew that the publishing of
3  the report of the derogatory account was in error. (FAC at 2-6.)
4  Plaintiffs alleged that Defendants' conduct in continuing the
5  publication despite acknowledgment of its inaccuracy was
6  malicious and outrageous because only Defendants could
7  effectively remove the information. (Id. p. 6.)

8      It is sufficient to allege what might otherwise be a legal
9  conclusion regarding a subjective state of mind where specific
10 facts are also alleged that would support the more general
11 allegation. Perkins v. Superior Court (General Telephone
12 Directory Company), 117 Cal.App.3d 1 (1981) (allegations of
13 repeated wrongful, intentional, and retaliatory republication in
14 a directory of information known to be erroneous sufficed to
15 allege malice where read not in isolation but in the context of
16 all the allegations of the complaint). That Plaintiffs had not
17 been notified of any deficiency and in fact had been told that no
18 money was owed on the account may be considered. See, Agarwal v.
19 Johnson, 25 Cal.3d 932, 945 (1979) (disapproved on another point
20 in White v.Ultramar, Inc., 21 Cal.4th 563 (1999)). Plaintiffs'
21 allegations suffice to put Defendants on notice that specific
22 repeated injurious conduct, undertaken despite knowledge of its
23 falsity, was done with a wilful and knowing disregard or
24 Plaintiffs' rights. Because malice is sufficiently alleged,
25 Defendant's argument that the complaint reflects a privilege on
26 its face rejected.

27     Further, Defendant POAM's argument made later in the moving
28 papers (Mot. pp. 20-22) to the effect that there are insufficient

11

allegations of oppression, fraud, or malice, which must be proven pursuant to Cal. Civ. Code § 3294 by clear and convincing evidence, is likewise rejected. Repeated publication, or authorizing repeated publication, of incorrect derogatory information can constitute a legally adequate basis for malice. It is for the trier of fact to determine the precise strength of the evidence.

Accordingly, the Court concludes that Defendant POAM has not shown that Plaintiffs' defamation claim should be dismissed for failure to state a claim.

The Court notes that in response to Defendant POAM's motion, Plaintiffs refer to documents that Plaintiffs submitted in opposition to the motion of AR, including correspondence from June 2003 through July 2004 from POAM to Plaintiff and others, that would establish knowledge on the part of POAM of an erroneous placement of the account with AR (Opp. to Mot. of AR, Decl. of P. Michael Pekin, Exs. G-1 through G-3), as well as credit reports from June 2003 and July 2004 (Exs. H-1 through H-2) which still reflect the derogatory information. Counsel also refers to deposition testimony of the director of collections for POAM. The correspondence appears to have been referred to in the complaint and does not appear to be disputed with respect to authenticity. The materials do not appear to be necessary to the Court's conclusion, but in any event, they do not appear to contradict the allegations of the complaint, which themselves are sufficient.

### B. Breach of Contract: Second Claim

Defendants argue that the second and third causes of action

for breach of contract fail to state claims upon which relief can be granted. (Mot. p. 10.)

Plaintiffs withdraw the third and fourth causes of action, which are based on the CCCRAA, as pre-empted by the federal Fair Credit Reporting Act. (Opp. to Mot. of POAM, Doc. 23, p. 5.)

Thus, the Court will address only the second claim, which is entitled, "BREACH OF CONTRACT BY COMMISSION OF COMMON LAW TORT OF LIBEL," (FAC p. 8), and which consists of re-allegations of the defamation claim (at pp. 8-9, ¶¶ 33 through 37), as well as statements that pursuant to the contracts between Plaintiffs and Defendants, which were solicited by Defendant POAM, between 1999 and 2002, Defendants had an obligation to exercise care to avoid injury to Plaintiff's good credit standing, and Defendants breached that special duty of care by committing libel, entitling Plaintiffs to all "permissible recovery in both contract and tort for the injuries complained of herein." (Id. p. 9.)

Defendants argue that the claim is insufficiently stated because the terms of the contract are not set out verbatim or attached to the complaint and incorporated by reference. Further, Plaintiffs do not state which terms were violated. Defendants attach to their opposition the Los Banos Contract from December 1, 1999. (Opp. Ex. 2.) Defendants argue that the terms of the contract control and that they are contrary to Plaintiff's allegations.

The elements of a breach of contract claim under California law are the contract, Plaintiffs' performance or excuse for nonperformance, Defendants' conduct constituting a breach of the contract, and resulting damage. Reichert v. General Ins. Co. of

13

1  <u>America</u>, 68 Cal.2d 822, 830 (1968).

2      Here, Plaintiffs did make allegations in the first claim,

3  which were incorporated into the second claim, that Plaintiffs

4  did perform their part of the contract and that no money was

5  owed. In the first claim Plaintiffs further referred to their two

6  contracts with POAM in effect between 1999 and 2002, but

7  Plaintiffs did not refer to the precise terms of the contracts in

8  question, and did not attached the contracts to the complaint.

9  Plaintiffs have not pleaded the operative terms of the contract.

10 Instead, Plaintiffs have merely stated that an obligation arose

11 pursuant to the contract.

12     Generally, if the contract is written, the terms must be set

13 forth verbatim or a copy attached and incorporated by reference.

14 <u>Otworth v. Southern Pac. Transportation Co.</u>, 166 Cal.App.3d 452,

15 458-59 (1985). A cause of action is not validly pleaded if there

16 is no mention of whether the contract is written or oral, no

17 setting forth any of the alleged terms, and no assertion that the

18 Plaintiff has either performed the contract or is excused from

19 performing. <u>Id.</u> at 459. It has even been held that where it

20 affirmatively appears that all the terms of the contract or the

21 legal effect thereof are not set forth, the complaint is

22 insufficient. <u>See</u>, <u>Gilmore v. Lycoming Fire Ins. Co.</u>, 55 Cal.

23 123, 124 (1880).

24     The copy of the contract submitted by Defendants is lengthy

25 and contains much small or fine print. A promise on the part of

26 Defendants to exercise care to avoid injury to Plaintiffs' good

27 credit standing is not immediately apparent.

28     Plaintiffs argue that the claim is based on an implied-in-

1  law duty not to injure Plaintiff. (Opp. p. 6.) However, Plaintiff
2  has not stated those facts in the complaint.

3      The Court concludes that Plaintiff's statement of the second
4  claim fails to give adequate notice to the Defendant of the
5  precise contractual basis of the claim. It does not appear that
6  it would be futile to grant leave to amend to Plaintiff. Thus,
7  the Court will permit amendment of the complaint to state a claim
8  in contract.

9          C. Third and Fourth Claims

10     Defendant POAM engages in a lengthy argument to the effect
11  that the FAC's third and fourth claims (breach of contract by
12  commission of violation of California's Consumer Credit Reporting
13  Agencies Act (CCRAA), and straight violation of CCRAA) are
14  preempted by the federal Fair Credit Reporting Act. (Mot. pp. 12-
15  18.)

16     Plaintiffs withdraw their third and fourth causes of action
17  on the ground of preemption. (Opp., Doc. 23, p. 5.)

18     Thus, the Court will grant the motion to dismiss, without
19  leave to amend, as to Plaintiffs' third and fourth claims
20  pursuant to the parties' agreement that the claims are preempted
21  by federal law.

22          D. Lori Woods as Plaintiff

23     Defendant POAM argues that Lori Woods does not have standing
24  to assert a claim for the personal injury of libel because such
25  an interest is personal, and only Plaintiff Robert A. Woods had a
26  derogatory account posted on his credit reporting. Defendant
27  relies on Exhibit 1, page 1 (the actual derogatory posting),
28  which reflects in the column on the left that the derogatory

1  account posting was for "B," that is, the borrower, and not for

2  "C," the co-borrower.

3      Defamation is an invasion of the interest in reputation.

4  Smith v. Maldonado, 72 Cal.App.4th 637, 645 (1999). In order for

5  a defamatory statement to be published, it must be communicated

6  to some third person who understands the defamatory meaning and

7  application to the Plaintiff. Ringler Associates v. Maryland Cas.

8  Co., 80 Cal.App.4th 1165, 1179 (2000). It is recognized that an

9  individual may have an action where the defamatory matter is

10  directed against a class of persons to which he or she belongs if

11  the class is not too large, and it can be shown that those to

12  whom the matter is communicated reasonably understand that it is

13  intended to apply to the Plaintiff. 5 Witkin, Summary of

14  California Law, § 531, pp. 783-84 (10th ed. 2005) (citing numerous

15  treatises and secondary sources). For example, it was possible

16  that a statement directed to "officials" of a particular

17  workers's alliance might have been understood as referring to the

18  Plaintiff, one of three paid officials, but it was held that the

19  entire group contained over 160 members and thus was too large to

20  permit the inference that it was intended to apply to an unnamed

21  official. Noral v. Hearst Publications, 40 Cal.App.2d 348, 350-54

22  (1940). In Noral, the court held that despite Cal. Code Civ.

23  Proc. § 460, defamatory statements must defame an ascertainable

24  person with some certainty, such as where there is some fact

25  alleged that reveals that the statement was intended to refer to

26  the plaintiff or was reasonably susceptible of special

27  application to a given individual; where a group is very large

28  and nothing that is said applied in particular to the plaintiff,

16

1  the plaintiff cannot recover. Id. p. 350-52.

2      Further, as Plaintiff notes, there is authority for the
3  proposition that naming is not a necessary or necessarily
4  determinative factor; rather, it is whether under the facts the
5  statement may be understood to refer to the Plaintiff. See,
6  McGarry v. Norton, 137 Cal.App.2d 581 (1955) (sufficient to
7  allege that a motor vehicle was parked in front of plaintiffs'
8  place of business with sign saying "Nuts to You--You Old Witch"
9  because reasonable persons of ordinary intelligence, giving the
10 words their fair and natural meaning, could understand that the
11 plaintiffs were being described).

12     Here, the complaint alleges that Plaintiffs Robert and Lori
13 Woods entered into the contracts to install and maintain the home
14 alarm, as well as the new contract upon moving to the new home;
15 both were told the first contract had no money owing; and both
16 performed the contracts. It is alleged that defendants "falsely
17 published to credit reporting services that plaintiffs had not
18 made their required contractual payments to defendants," and had
19 defaulted and were indebted. (FAC p. 4.) The documents submitted
20 by Defendants show that the precise credit entry was concerning
21 only Defendant Robert Woods as "B," or borrower, but it also
22 indicated in substance that the account owing to Asset Resources
23 was unpaid and had been referred to collection. Contract
24 documents list Lori Woods as a customer as well as her husband,
25 Robert (1999 contract, Doc. 22, pp. 14, 18). It therefore appears
26 that with respect to the claim alleged, a reasonable person could
27 understand that the reports of an account in default and in
28 collection status could refer to Plaintiff, a co-obligor, such

1  that Plaintiff Lori Woods suffered an individual injury to her
2  reputation.

3      The Court thus concludes that Plaintiff's claim is
4  adequately alleged.

5      E. Damages

6      Defendant POAM's argument concerning the insufficiency of
7  the allegations to constitute malice within the meaning of Cal.
8  Civ. Code § 3294 has previously been rejected; the allegations
9  are sufficient to state a claim based on repeated publication of
10 information known to be false in wilful and conscious disregard
11 for the rights of Plaintiffs and thus constituting despicable
12 conduct. "Malice" within § 3294 means conduct which is intended
13 by the defendant to cause injury to the plaintiff or despicable
14 conduct which is carried on by the defendant with a willful and
15 conscious disregard of the rights or safety of others. §
16 3294(c)(1). "Despicable conduct" is conduct that is so vile,
17 base, contemptible, miserable, wretched, or loathsome that it
18 would be looked down upon and despised by ordinary, decent
19 people, Mock v. Michigan Millers Mutual Ins. Co., 4 Cal.App.4th
20 306, 330 (1992); it has the character of outrage frequently
21 associated with crime, Tomaselli v. Transamerica Ins. Co., 25
22 Cal.App.4th 1269, 1287. If the defendant's acts are
23 reprehensible, fraudulent, or in blatant violation of law or
24 policy, then punitive damages are appropriate. Id. Unintentional
25 conduct is not sufficient. Mock, 4 Cal.App.4th at 332. The
26 defendant must act with the intent to vex, injure, or annoy the
27 plaintiff, or with a conscious disregard of the plaintiff's
28 rights. Neal v. Farmers Ins. Exchange, 21 Cal.3d 910, 922 (1978).

Mere carelessness or ignorance does not justify punitive damages; rather there must be tortious conduct rising to the level of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate. <u>Tomaselli</u>, 25 Cal.App.4th at 1286-87.

Defendant POAM argues that Plaintiffs are not entitled to punitive damages based on claims relating to breach of contract.

Cal. Civ. Code § 3294 provides for damages for the sake of example and by way of punishing the defendant in an action for breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. As to contractual recovery, the governing California law permits recovery in contract actions of as nearly as possible the equivalent of performance, or "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300.

Plaintiff's defamation claim appears to be based on a tort theory. Thus, with respect to Plaintiffs' first claim, the tort or defamation claim, Plaintiffs have pled entitlement to punitive damages. With respect to the second claim, to the extent that it constitutes an action on the contract, it does not appear that Plaintiffs are entitled to punitive damages.

In summary, it is concluded that Plaintiff's third and fourth claims for relief fail to state claims upon which relief may be granted pursuant to Rule 12(b)(6), and there is no basis for granting leave to amend; further, Plaintiff's second claim

1  for breach of contract fails to state a claim, but leave to amend

2  should be granted; and Plaintiff's claim for punitive damages

3  from a breach of contract in the second claim is stricken.

4  Otherwise, the motion of Defendant POAM to dismiss should be

5  denied.

6      II. <u>Indispensable Party</u>

7      Defendant POAM argues that pursuant to Fed. R. Civ. P.

8  12(b)(7), the case should be dismissed because Plaintiff failed

9  to join an indispensable party, namely, Equifax.

10     A motion to dismiss may be brought pursuant to Fed. R. Civ.

11 P. 12(b)(7) for failure to join a party under Rule 19. Such a

12 motion may be brought either before answering by a motion to

13 dismiss, by a motion for judgment on the pleadings, or even for

14 the first time at trial. Fed. R. Civ. P. 12(h)(2).

15     Fed. R. Civ. P. 19 provides:

16         (a) **Persons to be Joined if Feasible.** A person who
       is subject to service of process and whose joinder will
17     not deprive the court of jurisdiction over the subject
       matter of the action shall be joined as a party in the
18     action if (1) in the person's absence complete relief
       cannot be accorded among those already parties, or (2)
19     the person claims an interest relating to the subject
       of the action and is so situated that the disposition
20     of the action in the person's absence may (i) as a
       practical matter impair or impede the person's ability
21     to protect that interest or (ii) leave any of the
       persons already parties subject to a substantial risk
22     of incurring double, multiple, or otherwise
       inconsistent obligations by reason of the claimed
23     interest. If the person has not been so joined, the
       court shall order that the person be made a party. If
24     the person should join as a plaintiff but refuses to do
       so, the person may be made a defendant, or, in a proper
25     case, an involuntary plaintiff. If the joined party
       objects to venue and joinder of that party would render
26     the venue of the action improper, that party shall be
       dismissed from the action.
27         (b) **Determination by Court Whenever Joinder not
       Feasible.** If a person as described in subdivision
28     (a)(1)-(2) hereof cannot be made a party, the court

20

shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In determining a motion to dismiss for lack of an indispensable party, it must first be determined whether the absent party is necessary to the suit pursuant to Fed. R. Civ. P. 19(a). If the party is necessary, then if that party cannot be joined, then it must be assessed whether the party is indispensable so that in equity and good conscience, the suit should be dismissed pursuant to Rule 19(b). Shermoen v. United States, 982 F.2d 1312, 1317. The inquiry is a practical process, is fact-specific, and is designed to avoid the harsh results of rigid application. Id. p. 1317. The moving party has the burden of proof that dismissal is necessary. Id. (quoting Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990)). An objection pursuant to Rule 19 usually requires an evidentiary showing as to the reasons why the absent party's presence is necessary for a just adjudication. Hess v. Gray, 85 F.R.D. 15, 21 (D.C.Ill. 1979); see Imperial v. Castruita, 418 F.Supp.2d 1174, 1178 (C.D.Cal.2006) (noting that conclusory statements, without any evidence of the indispensable nature of the persons not named, were insufficient to satisfy the analysis under Rule 19(a)).

The determination of whether a non-party should be joined

pursuant to Rule 19(a) rests within the discretion of the Court based on a consideration of the facts of the case and the policies underlying the rule. Bakia v. Los Angeles County of State of California, 687 F.2d 299, 301 (9th Cir.1982). Rule 19 requires a trial court to engage in a two-step analysis. The first step is to consider whether nonjoinder would prevent the award of complete relief, or the absentee's interests would otherwise be prejudiced or the persons already parties would be subject to a substantial risk of double or inconsistent obligations. The Ninth Circuit has instructed courts to consider various policies when deciding whether a non-party should be joined, including the plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing the parties with complete and effective relief in a single action, protecting the absentee, and fairness to the other party. The determination is heavily influenced by the facts and circumstances of each case. It is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just adjudication, and who have a separate cause of action entirely. Id. at 301. The absence of an entity that is separately or independently liable does not generally impede the defense of present defendants. Behrens v. Donnelly, 236 F.R.D. 509, 514-15 (D.Haw. 2006).

Defendant POAM makes assertions of fact to the effect that Plaintiff's account was reported to Equifax on July 15, 2001, and that Plaintiffs discovered the derogatory account in June 2003. Plaintiffs commenced their lawsuit on July 24, 2003, naming Defendant POAM as the only defendant, with 100 "Doe" defendants

named. This is supported by documentation referred to in the complaint as well as counsel's declaration.

Defendant POAM also claims that on numerous occasions, Asset Resources (AR) contacted Equifax and requested that Plaintiff's name be removed from Equifax's reporting system; there is a genuine issue of fact as to why Equifax refused to comply with Asset Resources' numerous requests. The only source for such data named by Defendant POAM is the motion to dismiss of AR. (Mot. of POAM p. 19.) Reference to that document shows that it consists of a declaration of Michael Pekin, Plaintiffs' counsel, supported by references to "[t]he record from the proceedings in state court," referring to the case before it was removed to this Court. The references to the state court record are not in turn supported by documentation in some respects. There are references to depositions of Mary Moorman, POAM's director of collections, and excerpts are quoted from a deposition taken in February 2006, tending to show that Plaintiffs did not owe a balance on the first contract, that it was unknown why the account was placed for collections from Los Banos, and that there was no evidence of an attempt of the Los Banos POAM people to contact anyone in Atwater about a collection. It is asserted that the state court action commenced in July 2003, and that POAM moved for summary judgment in February 2006 on the ground that malice was not effectively pleaded; Plaintiffs conceded the point and filed a first amended complaint (FAC). There are assertions concerning the state of the evidence in Plaintiff's possession (presumably from discovery) as of December 20, 2005, when the motion to amend was filed, to the effect that it indicated that Defendant Asset

1   Resources was the express agent of Defendant POAM but did not

2   have conclusive information due to the state of ongoing

3   discovery; however, as of December 2005 there was no reason or

4   tactical advantage to bringing in an agency from Minnesota into

5   California litigation where complete relief could be obtained

6   from the principal, POAM, which had accepted state court

7   jurisdiction and had litigated there for two years. (Decl. pp. 6-

8   9.)

9       Pekin further declared that the thrust of Moorman's

10  deposition was that POAM's collection department in June 2003

11  sent three letters of apology to Plaintiffs and to Asset

12  Resources accepting responsibility for having placed Plaintiffs'

13  account into collections erroneously and representing that the

14  derogatory information had been pulled from the collections

15  agency and would have no future effect on Plaintiffs' credit.

16  (Decl. p. 9, referring to Exs. G1 through G3, which include a

17  letter of June 23, 2003, addressed to whom it might concern to

18  the effect that the accounts were erroneously placed with Asset

19  Resources Collection Agency and that any reference of the

20  accounts should be removed from the credit bureau report of

21  Robert Woods.) The declaration refers to exhibits H-1 from June

22  2003, H-2 from July 2004, and H-3 from November 2004, long after

23  the letters had issued, still reflecting the derogatory account

24  and a credit score apparently affected by this until March 2005,

25  when the account was removed and the credit score jumped 93

26  points from 660 in November 2004 to 753 in March 2005. The

27  listing under present status states "COLLECTION EF." There is

28  also an indication under the Equifax credit score model of a

"derogatory public record or collection filed." This evidence tends to show that Equifax was the entity continuing to report the delinquent account on the CCI credit reports.

Counsel further declares that Moorman testified that it was AR's fault that the derogatory information had remained against Plaintiffs' credit for over a year and a half after POAM had actual knowledge of the falsity of the statement. (Decl. 10-11.) Moorman testified that on September 15, 2003, POAM had documentation of a conversation with AR confirming that the account was closed and paid in full on the credit reporting bureau. Thereafter, POAM failed to admit that there was an agency relationship between POAM and AR; counsel characterized the position of POAM as blaming AR for assuring POAM in September 2003 that the account had been removed from Equifax for a year and a half before it was actually removed. (Decl. p. 11.) Two weeks after the Moorman deposition, Plaintiffs' counsel moved to name AR in place of a "Doe."

There does not appear to be any evidence supporting the assertion that AR repeatedly contacted Equifax to remove the account.

However, it may be assumed from the credit reports that Equifax continued to report the account as in collection status from AR. It is clear that POAM contacted AR about the account to correct the error; considering the absence of evidence on the point, it may be that AR did not effectively relay that information to Equifax. Another possibility is that AR did contact Equifax and that Equifax continued to publish the incorrect information.

With respect to application of the law to the facts, Plaintiffs' position is essentially correct. Equifax under either factual scenario would appear to be a joint tortfeasor. A joint tortfeasor is not a necessary party because the liability of tortfeasors is joint and several; thus, complete relief may be afforded by joining only one. Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) (relying on the text, history, and comments to Rule 19 to hold that it was not necessary to join doctor and hospital in patient's suit against manufacturer of defective device that had been surgically implanted; the absent entities were simply permissive, and not necessary, parties because they were joint tortfeasors); Countrywide Home Loan, Inc. v. Superior Court, 69 Cal.App.4th 785, 793-94 (1999) (mortgage banker suing developers and other alleged participants in a fraudulent "builder bailout" scheme was held not to be required to join the original lender and individual borrowers because complete relief could be afforded between the extant parties, particularly where the interests of the absent party had been assigned to a party). Where the threshold requirements of Rule 19(a) are not satisfied, such as where the absent parties are merely joint tortfeasors, there is no need to conduct the inquiry under Rule 19(b). Temple, 498 U.S. at 7.

Here, it appears that complete relief may be obtained by Plaintiffs against Defendants even in the absence of Equifax. A trier of fact could determine the conduct of each Defendant and the damages suffered by the Plaintiffs as a result of that conduct. It does not appear that the absentee's interests would be prejudiced or the persons already parties would be subject to

a substantial risk of double or inconsistent obligations. It is
not clear that any of the present parties would represent the
interest of the absent tortfeasor; it is possible that the
various tortfeasors would have inconsistent defenses, but it is
not known at this time. It is generally not sufficient to make an
absent joint tortfeasor a necessary party where there is a
possibility that in the absence of the party (here Equifax), the
present defendant might be liable in the original action and lose
a subsequent action for contribution against the joint
tortfeasor. The defendant can avoid, or could have avoided, this
harm by impleading the joint tortfeasor in the pending case. The
present defendants have not previously sought to do so.
Countrywide Home Loans, Inc., 69 Cal.App.4th at 796-97 (quoting 4
Moore's Federal Practice § 19.03); Stabilisierungsfonds Fur Wein
v. Kaiser Stuhl Wine Distributors Pty. Ltd., 647 F.2d 200, 208
(D.C.Cir. 1981) (same regarding trade infringement).

     The Court may consider the timeliness of a motion pursuant
to Rule 12(b)(7) if it appears that the defendant is interposing
the motion for its own defensive purposes rather than to protect
the absent party's interests. Fireman's Fund Ins. Co. v. National
Bank of Cooperatives, 103 F.3d 888, 896-97 (9th Cir. 1996)
(relying in part on the Committee Notes to the 1966 amendment of
Rule 19). It appears that the moving defendants could have sought
joinder for their own protection earlier. There is no evidence
that the absent party would be bound by the judgment in the
instant case, so there does not appear to be any prejudice to
that party.

     Because it does not appear that Equifax is a necessary

1  party, the analysis pursuant to Rule 19(b) will not be

2  undertaken.

3      Accordingly, Defendants' motion pursuant to Rule 12(b)(7)

4  will be denied.

5            MOTION OF DEFENDANT ASSET RESOURCES, INC.

6      Defendant Asset Resources, Inc. (AR) moves to dismiss

7  Plaintiff's complaint and seeks reasonable attorney's fees,

8  costs, and disbursements. (Mot. p. 2.) AR represents that it was

9  not joined as a party Defendant until March 28, 2006; Plaintiff

10 does not dispute this assertion.

11     I. Statute of Limitations

12     Defendant AR argues that the claims against it are time-

13 barred.

14         A. Motion Procedure

15     Although ordinarily a motion pursuant to Rule 12(b)(6)

16 cannot be used to raise an affirmative defense, where the

17 complaint on its face discloses an absolute defense or bar to

18 recovery, such as the running of a statute of limitations, a

19 motion to dismiss for failure to state a claim lies. Jablon v.

20 Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). On the other

21 hand, where the running of the statute cannot be determined from

22 the face of the complaint, a motion for summary judgment is the

23 proper procedure. Supermail Cargo, Inc. v. United States, 68 F.3d

24 1204, 1206 (9th Cir. 1995). If the defense is not apparent on the

25 face of the complaint, and the motion to dismiss is not

26 accompanied by acceptable affidavits, use of the summary judgment

27 procedure is appropriate. Jablon v. Dean Witter & Co., 614 F.2d

28 677, 682 (9th Cir. 1980). A motion to dismiss based on the running

1  of the statute of limitations may be granted only if the

2  assertions of the complaint, read with the required liberality,

3  would not permit the plaintiff to prove that the statute was

4  tolled; that is, it must appear beyond doubt that the plaintiff

5  can prove no set of facts that would establish the timeliness of

6  the claim. Jablon, 614 F.2d at 682. The factual and legal issues

7  must be sufficiently clear to permit the Court to determine with

8  certainty whether the doctrine could be successfully invoked.

9  Supermail Cargo, Inc. v. United States, 68 F.3d at 1207.

10                    B. Limitations Period

11       With respect to a contract action, Cal. Civ. Proc. Code §

12  337(1) requires that an action for breach of contract or

13  liability founded upon an instrument in writing be brought within

14  four years. Defendant AR argues that Plaintiffs were compelled to

15  bring suit against AR no later than July 15, 2005 (four years

16  after July 15, 2001, when the report first was made). The Court

17  notes that suit was brought by this time, but AR was not named as

18  a Defendant until March 28, 2006. Thus, the discussion of

19  relation back of the naming of Doe defendants, which is set forth

20  below, is pertinent to the running of the statute on the contract

21  claim.

22       With respect to defamation, Defendant points to Cal. Civ.

23  Proc. Code § 340(c), which provides that an action for libel must

24  be maintained within one year. Each time a defamatory

25  communication is communicated to a third person who understands

26  its defamatory meaning as applied to the plaintiff, there is a

27  publication which gives rise to a new defamation cause of action

28  under California law. Shively v. Bozanich, 31 Cal.4th 1230, 1242-

29

43 (2003). Defendant argues that the account was reported to
Equifax on July 15, 2001; hence, Plaintiffs were required to
bring suit for defamation on or before July 15, 2002.

Testimony and other evidence summarized by Plaintiffs'
counsel and not disputed by Defendants indicates that in June
2003 in connection with housing financing, Plaintiffs first
learned of the derogatory information, contacted AR, and informed
POAM that the account was incorrectly reported as delinquent; in
September 2003, POAM confirmed with AR that the derogatory
information was incorrect, was removed, and would not affect
Plaintiffs' credit. The incorrect derogatory information remained
on the account until March 2005, with AR's knowledge of
inaccuracy from September 2003 and its assertion to POAM that it
had cleared the matter.

Thus, the publications in question begin on July 15, 2001,
and extend through March 2005. The one-year statute of
limitations runs on July 15, 2002, absent something to take the
case without the statute. Defendant AR notes that it was not
until March 28, 2006, that AR was substituted into the action in
place of a "Doe" defendant, and the requirement of malice was
adequately pleaded. Thus, argues AR, the statutes of limitation
bar Plaintiffs' claims against AR.

C. Discovery Rule

Plaintiffs contend that the "discovery rule" applies to save
the claims, and further that Plaintiff did not have actual
knowledge of malice, and thus did not have knowledge of the
existence of a claim against AR, until Mary Noonan gave
deposition testimony on February 16, 2006, that as early as

30

1 September 2003 AR had acknowledged to POAM that AR knew that the
2 derogatory report was false and had corrected the information.

3     With respect to the discovery rule, the period of
4 limitations generally commences when the cause of action accrues,
5 which for defamation is at the time of injury, or when the
6 statement is published or communicated to a person other than the
7 person being defamed. Shively v. Bozanich, 31 Cal.4th 1230, 1246-
8 47 (2003). However, there is a principle of tort law to the
9 effect that the accrual of a cause of action is tolled until the
10 time the plaintiff knows, or with reasonable diligence should
11 have known, the injury occurred. This rule effectively delays the
12 accrual of a cause of action until the plaintiff discovered or
13 reasonably should have discovered or suspected the factual basis
14 for his or her claim. Shively v. Bozanich, 31 Cal.4th at 1248.
15 The California Supreme Court in Shively declined to apply this
16 principle in a defamation case with respect to a published book
17 but recognized that this rule most frequently applies where it is
18 particularly difficult for the plaintiff to observe or understand
19 the breach of duty, or when the injury itself or its cause is
20 hidden or beyond what the ordinary person could be expected to
21 understand. Id. It has also been recognized that this rule has
22 been applied to defamation cases, Bernson v. Browning-Ferris
23 Industries, 7 Cal.4th 926, 931-32 (1994), and to a confidential
24 credit report, as an example of a document to which the Plaintiff
25 had no access or cause to seek access. Shively, id. at pp. 1249-
26 1253. See also, Manguso v. Oceanside Unified School District, 88
27 Cal.App.3d 725 (1979) (personnel file).

28     It is alleged that Plaintiffs first discovered the

31

derogatory, false publication in June 2003 from credit services; and that Plaintiffs performed their contracts with POAM and were never told that any money was owed on the cancelled Los Banos contract. (FAC at p. 3-4.)

Although no California Supreme Court case precisely on point is found, the case before the Court appears to be an appropriate situation in which to apply the discovery principle to save the running of the statute of limitations.

Thus, if Plaintiffs first discovered the defamation in the summer of 2003, suit would have to be brought by the summer of 2004. Plaintiff did bring suit within this time, but Plaintiff did so by naming "Doe" defendants; Plaintiff later substituted Defendant AR in place of a Doe in March 2006.

D. <u>Relation Back of Substitution of Named Defendant for a "Doe" Defendant</u>

Fed. R. Civ. P. 15 provides in pertinent part:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an

agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

In a case pending in federal court on the basis of diversity jurisdiction, the governing law concerning the statute of limitations is state law, including the state law of relation back of amendments to pleadings. <u>Lindley v. General Electric Co.</u>, 780 F.2d 797, 799-801 (9th Cir. 1986). Rule 15(c) should not be applied to defeat an action that is not time-barred under state law. <u>Id.</u> at 800-801.

Cal. Civ. Proc. Code 474 provides in pertinent part:

> When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly....

Cal. Civ. Proc. Code § 474 permits a plaintiff to designate as "Doe" defendants parties whose true identities are unknown at the time the complaint is filed. Under California law, an amended pleading will relate back to the date of an earlier filing when the amended pleading 1) is based on the same general set of facts as the original, 2) seeks relief for the same injuries, and 3) refers to the same incident or instrumentality. <u>Norgart v. Upjohn Co.</u>, 21 Cal.4th 383, 408-09 (1999); <u>Abreau v. Ramirez</u>, 284 F.Supp.2d 1250, 1257 (C.D.Cal.2003) (citing <u>Edwards v. Superior court</u>, 93 Cal.App.4th 172 (2001)). Further, for an amendment that is sought with respect to a "Doe" defendant not originally named in the original complaint, 1) the original complaint must state a valid cause of action against the now-identified Doe defendant;

2) the Plaintiff must have been genuinely ignorant of the Defendant's identity or of the facts rendering the defendant liable when the original complaint was filed; and 3) the amended complaint must be based on the same general set of facts as the original complaint and must refer to the same accident and injuries. Austin v. Massachusetts Bonding & Ins. Co., 56 Cal.2d 596, 600-601 (1961).

Under California law, the application of Cal. Civ. Proc. Code § 474 and the relation-back principle does not depend upon notice to the defendants or any lack thereof. Sobeck & Assocs., Inc. v. B&R Investments, 215 Cal.App.3d 861, 869-70 (1989). The knowledge of the Plaintiff is tested at the time suit is filed. Sobeck, 215 Cal.App.3d p. 867. Where after acquiring knowledge of the identity of a Doe defendant, a Plaintiff delays in seeking to amend the complaint, the Court must determine whether the delay was unreasonable and whether the Defendant suffered specific prejudice; where no specific prejudice is shown, the action will not be time barred. Sobeck, 215 Cal.App.3d 861, 869; Barrows v. American Motors Corp., 144 Cal.App.3d 1, 9 (1983). A plaintiff is entitled to employ § 474 even if the Plaintiff has constructive or legal knowledge of the identity; generally, merely having the means to discover knowledge is irrelevant; actual knowledge is required. General Motors v. Superior Court, 48 Cal.App.4th 580, 593-94 (1996). It has been held that it is the Defendant's burden to establish when Plaintiff actually knew of the identity. Breceda v. Gamsby, 267 Cal.App.2d 167, 179 (1968).

Here, it appears not to be contested that the amended pleading is based on the same general set of facts as the

original. The facts must be the same operative facts, or those
which create a right to recovery, which here are the reporting of
the account incorrectly by POAM to AR, and the reporting by AR of
the account to a credit agency that ran a report reflecting the
incorrect information. Reference to the original complaint (Orig.
Complt. pp. 1-4.) shows that the amended pleading is based on the
same general facts as the original pleading. Barrington v. A. H.
Robins Co., 39 Cal.3d 146, 151-52 (1985). The original complaint
referred to publishing the derogatory account information to
credit reporting services. The amended complaint now on file
added allegations of additional publications that occurred after
the filing of the original complaint. It thus reflects
supplemental misconduct which is still part and parcel of an
effort to seek relief for the same injuries on the basis of the
same primary rights invaded, even though it was not precisely the
same damages being claimed. See, Rowland v. Superior Court
(Zappia), 171 Cal.App.3d 1214, 1216-18 (added claim for mental
distress for observing death of Plaintiff's son involved same
injury as wrongful death suit for son's death due to
electrocution; court noted the well established policy of
allowing amendments liberally to avoid the bar of the statute
where recovery sought was based on the same general set of facts,
and distinguished the injury from the measure of damages); Austin
v. Massachusetts Bonding & Ins. Co., 56 Cal.2d 596 (1961)
(allegation of liability as a surety on a bond was a permissible
amendment in a suit involving alleged failure to deliver the bond
as a principal-same general set of facts and same general
defalcations). Here, the same primary right of the personal

35

interest in reputation was invaded in each claim. Accordingly, the amendment sought relief for the same injuries.

There is a split of authority as to whether or not supplemental claims relate back to the original complaint so as to avoid a statute of limitations defense. Some cases hold that there is no relation back of supplemental complaints because they do not supersede an original complaint and thus must stand on their own. ITT Gilfillan, Inc. v. Los Angeles, 136 Cal.App.3d 581, 589 (1982) (amended and supplemental complaint alleging entitlement to tax refunds in addition to those mentioned in the first amended complaint held not to relate back to the original complaint); Lee v.Bank of America NTSA, 27 Cal.App.4th 197, 214 (1994) (amendment of wrongful demotion complaint after statute of limitations had run on an independent action to allege wrongful termination held not to relate back because it alleged different wrongful conduct than that alleged in the first complaint). Other cases hold that where the original complaint gives notice that alleged wrongful conduct is of a continuing nature, a supplemental complaint based on the same conduct does relate back for purposes of the statute of limitations. Bendix Corp. v. Los Angeles, 150 Cal.App.3d 921, 926 (1984) (amended and supplemental complaint alleging additional tax refunds after limitations period had run held to relate back because the named defendants had notice of the subject of dispute and suffered no prejudice); Lamont v. Wolfe, 142 Cal.App.3d 375, 381-82 (1983) (amendment to complaint originally alleging wife's claim for medical malpractice and husband's claim for loss of consortium allowed after running of statute of limitations to allege husband's suit

1  as wife's heir for her wrongful death on theory that the same
2  type of loss (loss of consortium) was involved). These cases seem
3  consistent with the general principle that a supplemental
4  pleading should supplement the cause of action or defense
5  originally pleaded, as distinct from stating an entirely new
6  cause of action. <u>See</u>, <u>Flood v. Simpson</u>, 45 Cal.App.3d 644, 647
7  (1975), and authorities there cited. They also seem consistent
8  with the liberal allowance of amendments concerning the same
9  general set of facts and in the absence of prejudice. <u>See</u>, <u>Austin</u>
10 <u>v. Massachusetts Bonding & Ins. Co.</u>, 56 Cal.2d 596, 600 (1961).
11 Accordingly, the Court concludes that the same injuries were
12 involved.

13     With respect to reference to the same incident, accident, or
14 instrumentality, the instrumentality which causes the injury must
15 be the same. <u>Coronet Mfg. Co. v. Superior Court (McMahon</u>, 90
16 Cal.App.3d 342, 347 (1979). Thus, in <u>Coronet Mfg. Co.</u>, an
17 amendment alleging a defective lamp socket and switch to a
18 complaint that had alleged negligent manufacture of a hair dryer
19 did not relate back because the injury was from a different
20 instrumentality; in <u>Barrington v. A.H. Robins Co</u>, 39 Cal.3d at
21 151, an amendment to allege injury from a defective intrauterine
22 device did not relate back to a claim of negligent medical
23 treatment and failure to warn of dangers from taking a specified
24 drug. Here, the amendment alleged continued publication by AR of
25 credit information that would be reflected in third party credit
26 data bases; it did not change the instrumentality.

27     Thus, it appears that the general requirements for relation
28 back have been satisfied.

1   With respect to the additional requirements where a
2   complaint is amended after the statute of limitations has run to
3   identify a "Doe" defendant and to assert a cause of action
4   against that defendant not included in the original complaint,
5   Defendant AR claims that no valid claim was stated against AR.

6   The Court must determine whether the original complaint
7   stated a valid cause of action against Defendant AR. The original
8   complaint alleged that the defendants, including the "Doe"
9   defendants, of whom Plaintiffs alleged they were ignorant and who
10  were alleged to be responsible for the occurrences alleged in the
11  complaint and to have proximately caused Plaintiffs' damages, had
12  published to credit reporting services a false report that
13  Plaintiffs had not made their required contractual payments,
14  which were republished by credit reporting agencies, and which
15  resulted in Plaintiffs' being unable to refinance their home as
16  well as loss of reputation as to creditworthiness. (P. 3.)

17  Defendant AR argues that because malice was not properly
18  alleged in the original complaint, no valid claim was stated
19  against it. Plaintiffs alleged in the original complaint that
20  despite Plaintiffs' repeated demands to retract the libelous
21  statements, defendants had failed to do so and thus were liable
22  for punitive damages.

23  Plaintiffs conceded that they failed adequately to allege
24  malice in the original complaint. However, it appears that the
25  requirement that the original complaint state a claim is not that
26  a perfectly sufficient legal claim be stated, but rather that the
27  original complaint attempt to state a claim against the actual
28  entity ultimately served as a formerly fictitiously named

38

1  defendant. <u>See</u>, <u>Marasco v. Wadsworth</u>, 21 Cal.3d 82, 85-89 (1978).

2  There the original complaint did not state a claim against the

3  driver because the decision that invalidated the guest statute

4  that had precluded an action against the driver in the original

5  complaint had not been rendered when the original complaint was

6  filed. The complaint did state claims against others and alleged

7  that the negligence of fictitiously named defendants contributed

8  to the harm. The Supreme Court of California held that because

9  the amended complaint involved the identical accident and

10 injuries (same collision, and same death of the decedent) as that

11 referenced in the original complaint, the amendment to name the

12 driver after the statute of limitations had run related back. The

13 fact that the original complaint did not state a specific claim

14 against the actual individual ultimately named as a Doe was not

15 significant because the amendment substituted for Does persons

16 sought to be held responsible based on the same occurrence and

17 damage alleged in the original complaint, and the change of the

18 basis of liability of the Does from that of another car's driver

19 to the decedent's driver was not any more drastic than the change

20 from principal to surety reflected by the amendment in <u>Austin</u>.

21 The court further noted:

22         The original complaint attempts to state a claim
        against all the defendants, whether sued by true or
23      fictitious names.(<u>Hollister Canning Co. v. Superior
        Court</u> (1972) 26 Cal.App.3d 186 [102 Cal.Rptr. 713].) In
24      this respect, plaintiff need do no more than set forth
        or attempt to set forth a cause of action against such
25      defendants.(<u>Austin</u>, supra, 56 Cal.2d 596, 599.)
        Accordingly, plaintiff's original complaint stated a
26      claim with at least as much particularity as the state
        of the case law and the applicable statutes would
27      allow, and with as much specificity as was required in
        these earlier cases. These observations distinguish
28      this case from <u>Williams v. Goodman</u> (1963) 214

                                   39

1      Cal.App.2d 856, 861 [29 Cal.Rptr. 877], where there was
    absolutely no attempt by the pleader to assert a claim
2      against the fictitiously named defendants.

3  <u>Marasco v. Wadsworth</u>, 21 Cal.3d at 87.

4      Here, the original complaint adequately attempted to state a

5  claim against Doe defendants as being involved in the

6  publication. The fact that a claim was stated but was not

7  perfectly legally sufficient does not preclude relation back

8  where there was an attempt of the nature in the present case to

9  set forth a claim against Defendant AR. It thus appears that the

10  nature of the original complaint was not such that precludes

11  relation back.

12      As to AR's claim that Plaintiff had actual knowledge

13  concerning the identity of AR as a defendant, it is established

14  that the knowledge contemplated by § 474 is knowledge of the

15  person's identity as well as knowledge of the facts making him or

16  her liable when the complaint was filed. <u>Scherer v. Mark</u>, 64

17  Cal.App.3d 834, 841 (1976).

18      There is no evidence that at the time that the complaint was

19  filed, Plaintiffs had knowledge of facts concerning the state of

20  mind of AR. It appears that they knew of three letters emanating

21  in June from POAM, which stated that the information had been

22  incorrectly sent to Asset Resources Collections, an outside

23  collection agency, and the process of pulling the information was

24  in process or had been completed. This indicates that AR was a

25  conduit for the information, but it does not indicate that AR was

26  responsible for the continuous postings that were later

27  discovered or that it had any particular knowledge of the status

28  of the account information. Admissions by Plaintiffs' counsel of

1  knowledge as of November 2005 regarding an agency relationship
2  between POAM and AR do not permit an inference that the evidence
3  supporting that knowledge as known at the time the complaint was
4  filed. As Plaintiffs argue, and as Defendants themselves
5  forcefully argue, malice is an essential element of defamation in
6  this context of qualified privilege. There is no evidence that
7  malice on the part of AR was known by Plaintiffs at the time the
8  original complaint was filed.

9      Defendant AR argues that Plaintiffs should be judicially
10 estopped from arguing that they did not know of the role of AR,
11 as distinct from its identity and involvement, because they did
12 not raise this lack of knowledge of role in attempting to obtain
13 leave to amend in the state court before the action was removed.
14 Defendant AR asserts that the only basis of seeking amendment in
15 state court was that Plaintiffs had discovered the identity of a
16 Doe defendant.

17     Federal law governs the application of judicial estoppel in
18 federal court. Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir.
19 1997) (diversity case). Judicial estoppel is an equitable
20 doctrine that precludes a party from gaining an advantage by
21 asserting one position and then later seeking an advantage by
22 taking a clearly inconsistent position. Hamilton v. State Farm
23 Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Some factors
24 which may be considered in determining whether to apply a
25 judicial estoppel are 1) whether the party's position is clearly
26 inconsistent with its earlier position; 2) whether the party has
27 succeeded in persuading a court to accept that party's earlier
28 position so that judicial acceptance of an inconsistent position

41

1  in a later proceeding would create the perception that either the
2  first or the second court was misled; and 3) whether the party
3  seeking to assert the inconsistent position would derive an
4  unfair advantage or impose an unfair detriment on the opposing
5  party if not estopped. Id. at 782-83 (quoting New Hampshire v.
6  Maine, 532 U.S. 742, 121 S. Ct. 1808, 1815 (2001)). The estoppel
7  is invoked not only to prevent a party from gaining an advantage
8  by taking inconsistent positions, but also because of general
9  considerations of the orderly administration of justice, regard
10 for the dignity of judicial proceedings, and to protect against a
11 litigant's playing "fast and loose" with the courts. Id. at 782.

12      In this circuit, the court must have relied upon or
13 accepted the previous inconsistent position; however, the
14 doctrine may be applied to inconsistent positions taken in two
15 different proceedings. Id. at 783.

16      Here, the two positions are not substantially inconsistent;
17 recognizing at this juncture that information regarding role has
18 not been shown to have been possessed at the time the suit was
19 originally filed would not necessarily create the perception that
20 either court was misled. Finally, no unfairness appears in
21 permitting the joinder of AR and amendment; AR has the
22 opportunity by way of the present motion and by all other
23 available means permitted by the pertinent statutes and rules to
24 address the pleadings. Accordingly, Plaintiffs will not be
25 judicially estopped.

26      Defendant AR argues that it was prejudiced in that it was
27 not able to defend itself at the initial stage of the lawsuit and
28 could not attack Plaintiffs' complaint, which was defective

42

1   because it did not allege malice. It should be noted that the FAC
2   contains allegations of malice, and Defendant AR is able to raise
3   to this Court any defects in the pleading of the complaint.

4        In summary, it is concluded that Defendant AR has not shown
5   that at the pertinent time, Plaintiffs knew of the identity and
6   role, state of mind, and malice of AR such that a claim was
7   stated against it independently of a claim against Defendant
8   POAM.

9        Further, in light of the state of discovery and evidence
10  before the Court, it is concluded that no unreasonable delay in
11  naming Defendant AR occurred, and no legally sufficient and
12  specific prejudice has been demonstrated by Defendant AR to
13  prevent relation back of the amendment.

14       Therefore, the Court concludes that Plaintiffs' naming of AR
15  is not barred by the statute of limitations because the statute
16  had not run; it related back to the filing of the original
17  complaint that named "Doe" defendants.

18       II. <u>Failure to Join Equifax</u>

19       Defendant AR makes essentially the same arguments regarding
20  Plaintiffs' failure to join Equifax as are made by Defendant
21  POAM. The Court rejects the argument that Equifax is a necessary
22  party for the reasons previously expressed and concludes that
23  Defendant has not shown that the action should be dismissed for
24  failure to join a party.

25                           <u>DISPOSITION</u>

26       Accordingly, it IS ORDERED that

27       1) The motion of Defendant Protection One Alarm Monitoring,
28  Inc., to dismiss IS GRANTED IN PART without leave to amend

                                43

1   pursuant to Fed. R. Civ. Proc. 12(b)(6) with respect to

2         a) Plaintiffs' third and fourth claims to relief, which

3   fail to state claims upon which relief may be granted, and

4         b) Plaintiffs' prayer for punitive damages in

5   Plaintiffs' second claim for relief based on breach of contract,

6   which IS STRICKEN;

7      2) Further, the motion of Defendant Protection One Alarm

8   Monitoring, Inc., IS GRANTED with respect to Plaintiff's second

9   claim for breach of contract, with leave to Plaintiffs to file an

10  amended complaint no later than fifteen days after the date of

11  service of this order; and

12     3) The motion of Defendant Protection One Alarm Monitoring,

13  Inc., IS OTHERWISE DENIED; and

14     4) The motion of Defendant Asset Resources, Inc., to dismiss

15  IS DENIED.

16

17  IT IS SO ORDERED.

18  **Dated:    December 21, 2006**              **/s/ Sandra M. Snyder**
    icido3                              UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28